UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL ACTION NO: 5:08-CV-32-RLV-DCK

| | |
|---|---|
| EST, LLC, successor-in-interest to ENVIRONMENTAL SCIENCE TECHNOLOGIES, INC., <br><br> Plaintiff, <br><br> v. <br><br> ROBERT C. SMITH, and WORKING CHEMICAL SOLUTIONS, INC., <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ORDER |

**THIS MATTER** is before the Court on the Plaintiffs' "Amended Motion to Stay Action and Compel Arbitration" (Document No. 9). The motion has been referred to the undersigned as of February 5, 2009. Having fully considered the record, including the motion, exhibits, response, reply, and related filings (Document No. 9-17, 20), the undersigned will **grant** the motion for the following reasons:

On December 29, 2006, the parties entered into a Sale and Purchase Agreement and Guaranty Release (the "Agreement") regarding a wild game attractant. (Document No. 9, Exh.1). The Agreement included provisions regarding non-disclosure of the formula and other confidential information, as well as a "non-compete" clause (¶ 2.05). The parties also agreed that the laws of North Carolina shall apply (¶ 6.08), that the Western District of North Carolina has sole and exclusive subject matter jurisdiction over the Agreement (¶ 6.09), and that any and all disputes arising from the Agreement shall be settled by arbitration (¶ 6.10). The latter clause specifically sets forth that:

> [A]ny and all disputes, controversies and differences arising out of this Agreement or any breach of it, which cannot be settle through correspondence and mutual consultation of the parties to this Agreement, shall be finally settled by arbitration through the American Arbitration Association pursuant to the then-existing Commercial Arbitration Rules. The locale of any such arbitration shall be in Charlotte, North Carolina. The award and decision rendered by the arbitrator(s) shall be binding upon the parties to this Agreement, and judgment upon the award shall be entered in the aforesaid court.

Subsequently, the Defendants allegedly disclosed the formula to third parties and began marketing a wild game attractant under another product name. The Plaintiff sent a letter (dated March 7, 2008) to Defendants demanding liquidated damages (as provided by the Agreement) and offering to accept a lesser amount in settlement. (Document No. 11, Exh. 2). Instead, the Defendants filed suit on March 31, 2008 in federal court in Arkansas. The Plaintiff filed suit on April 25, 2008 in federal court in North Carolina. The Arkansas case was transferred and consolidated with the present case on February 5, 2009. (Document No. 22).

The Plaintiff moves this Court to compel arbitration and asserts that all the claims in this consolidated case concern matters "arising from" the Agreement. The Federal Arbitration Act ("FAA") governs written agreements to arbitrate. 9 U.S.C. § 1 *et seq*. The purpose of the FAA is to "establish and regulate the duty to honor" arbitration agreements. *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 26 fn.32 (1983). The FAA applies to arbitration agreements involving interstate commerce and provides that such agreements are "valid, irrevocable, and enforceable." 9 U.S.C. § 2. The parties do not dispute the validity of the Agreement and that it involves interstate commerce. Plaintiff aptly points out that the Defendants' complaint in the Arkansas case indicated that the product was marketed in all fifty states.

Section 3 of the FAA sets forth in relevant part:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement. 9 U.S.C. § 3.

North Carolina "has a strong public policy favoring the settlement of disputes by arbitration.... [W]here there is any doubt concerning the existence of an arbitration agreement, it should be resolved in favor of arbitration." *Martin v. Vance*, 133 N.C.App. 116, 120 (1999) (citing *Johnston County v. R.N. Rouse & Co.*, 331 N.C. 88, 91-92 (1992)).

The Defendants "do not take issue with EST's statements of legal principles pertaining to the desirability of arbitration and the general enforceability of valid arbitration agreements and forum selection clauses." (Document No. 17, p. 2). However, the Defendants contend that 1) the Arkansas case involves tort claims outside the scope of the arbitration clause of the Agreement, 2) the Arkansas complaint named three persons who are not parties to the Agreement, and 3) the Plaintiff has not initiated a demand for arbitration with the American Arbitration Association. (Document No. 17).

Before a court orders parties to arbitrate a dispute, the court must determine whether the disputed issues are "within the substantive scope of the agreement." *Murray v. United Food and Comm. Workers Int'l Union*, 289 F.3d 297, 302 (4th Cir. 2002); *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83-84 (2002). Federal law favors arbitration in order to resolve cases more quickly and efficiently. *COMSAT Corp. v. National. Science Foundation*, 190 F.3d 269, 276 (4th Cir.1999)

(observing the policy in favor of arbitration for reasons of "speed, efficiency, and reduction of litigation expenses") (quoting *Burton v. Bush*, 614 F.2d 389 (4th Cir.1980)).

The Defendants suggest that the Plaintiff's claims for alleged trade secret misappropriation and unfair trade practices are not claims arising out of the Agreement. (Document No. 1, at ¶¶ 36 - 49). The Defendants also suggest that its own claims for defamation and tortious interference with business expectancy in Arkansas case are not claims arising out of the Agreement. (Document No. 17, p. 3). However, Defendants cite no authority, and as Plaintiff correctly points out, the case law indicates the contrary. The Court of Appeals for the Fourth Circuit has consistently held that an arbitration clause covering all disputes "arising out of" a contract includes "every dispute between the parties having a significant relationship to the contract regardless of the label attached to a dispute." *American Recovery Corp. v. Computerized Thermal Imaging*, 96 F.3d 88, 93 (4th Cir. 1996) (holding that arbitration clause in a contract would extend to claims of tortious interference with business expectancy and contractual relations); *Collie v. Wehr Disolution Corp.*, 345 F.Supp.2d 555, 562-63 (M.D.N.C. 2004) (explaining that the characterization of a claim as tort or contract does not control and that courts will look to the relationship of the claim to the subject matter of the arbitration clause).

The Plaintiff's complaint includes claims for breach of contract (¶¶ 15-21), breach of the non-compete agreement (¶¶ 22-35), violation of North Carolina Trade Secrets Protection Act (¶¶ 36-43), and violation of North Carolina Unfair and Deceptive Trade Practices Act (¶¶ 44-49). (Document No. 1). The Plaintiff correctly asserts that all these claims are all well within the scope of the clause which specifies arbitration for "any and all claims arising out of" the Agreement. (Agreement, ¶ 6.10). All the claims in this consolidated case arise from or are directly related to the

Agreement at issue here. For example, the Defendants entered into the Agreement whereby they would not disclose confidential information, such as the formula for the product, to third parties. This relates directly to the claim for alleged violation of North Carolina Trade Secrets Protection Act. (Document No. 1, ¶ 39).

The complaint from the Arkansas case indicates "this declaratory judgment is brought...for a declaration of rights, status, and other legal relations and obligations under certain terms and definitions of the Agreement." (Case No. 5:09-cv-3-RLV-DCK, Document No. 1, ¶ 29). The complaint also alleges defamation because the EST parties made allegedly false statements to other persons that Smith and Working Chemical Solutions were "under a Non-Compete Clause that has [them] ...tied up forever..." (Id., ¶ 44). Lastly, the Arkansas complaint alleged tortious interference with business expectancy because EST and/or its employees provided other companies with a redacted copy of the Agreement. (*Id.*, ¶ 61). Very simply, there is no question whatsoever that all the claims in this consolidated action arise directly from and have a significant relation to the Agreement at issue here. Moreover, the United States Supreme Court has held that any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. *Moses H. Cone*, 460 U.S. at 24-25.

Although the Defendants also argue that the Arkansas action includes three defendants who are not parties to the Agreement (*see* Document No. 20-2, p. 3) , the Plaintiff points out that those three parties are members or managers of EST who have all consented to participate in arbitration. (Document No. 20-2, pp. 6-7). Moreover, a "non-signatory may invoke an arbitration clause under ordinary state-law principles of agency or contract." *Long v. Silver,* 248 F.3d 309, 320 (4th

Cir.2001); *Collie,* 345 F.Supp.2d at 562 (observing that "their status as agents of the Corporate Defendant enables them to use the Agreement to compel arbitration").

Finally, the Defendants contend that:

> "[D]espite EST's stated preference for arbitration, it has not served a demand for arbitration. Under Rule R-4 of the American Arbitration Association's Commercial Arbitration Rules, which Rules would govern possible arbitration, EST must initiate arbitration by service an arbitration demand, and by filing the arbitration demand with the AAA. EST has taken none of these steps to initiate an arbitration proceeding." (Document No. 17, p. 3).

Defendants cite no authority for the proposition that the Plaintiff was somehow remiss by not initiating arbitration before this Court had even ruled upon the present motion. The Plaintiff indicates that, to initiate arbitration, it would have to incur non-refundable fees of $8,500.00 and that those fees should not be incurred until this Court orders arbitration.

**IT IS THEREFORE ORDERED** that the Plaintiffs' "Amended Motion to Stay Action and Compel Arbitration" (Document No. 9) is **GRANTED**.

**IT IS SO ORDERED.**

Signed: March 31, 2009

David C. Keesler
United States Magistrate Judge