UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:08-CV-32

| | |
|---|---|
| EST, LLC, successor-in-interest to ENVIRONMENTAL SCIENCE TECHNOLOGIES, LLC, <br><br>Plaintiff,<br><br>v.<br><br>ROBERT C. SMITH, Individually, and WORKING CHEMICAL SOLUTIONS, INC.,<br><br>Defendants,<br><br>v.<br><br>HANK PARKER, ROBERT E. HULSLANDER, JR., and IVAN HAWTHORNE,<br><br>Third-Party Defendants. | **ORDER** |

**THIS MATTER** is before the Court on Plaintiff's Motion to Vacate, Modify, and Confirm Arbitration Award (Doc. 33) filed March 10, 2011; Defendants' Brief in Opposition (Doc. 36) filed April 6, 2011; and Plaintiff's Reply Brief (Doc. 41) filed April 21, 2011. This matter is now ripe for disposition.

**I. BACKGROUND**

This matter involves a confidential deer attractant formula (the "Formula") that Defendants sold to Plaintiff EST, LLC for $500,000 under the terms of a Sale and Purchase Agreement and Guaranty Release dated December 29, 2006 (The "Agreement"). The Agreement contains an

1

arbitration provision. The Agreement also includes a clause allowing for $500,000 in liquidated damages if Defendants breached the Agreement's non-compete provision, disclosed the Formula to third parties, or used the Formula in an attempt to develop another deer attractant. EST alleged that Defendants breached the Agreement's non-compete provision, disclosed the Formula to third parties, and used the Formula in an attempt to develop another deer attractant. More specifically, EST alleged that Smith worked with one of EST's competitors to formulate another deer attractant.

EST commenced this action and simultaneously moved for an Order compelling arbitration. (Doc. 1.) By Order dated March 31, 2009, this Court granted the relief EST requested, sending the parties to binding arbitration. (Doc. 27.) On July 26, 2010, the arbitrator dismissed EST's claim that Defendants breached the Agreement's non-compete provision because the provision violated North Carolina law as it was not limited in time and territory. The parties proceeded with discovery on the remaining claims; that Defendants disclosed the Formula to third parties, and used the Formula in an attempt to develop another deer attractant.

The arbitration hearing was conducted on these claims on October 11th and 12th, 2010. At the end of the hearing, the arbitrator asked the parties to brief whether, in the absence of any proof of actual damages, the liquidated damages clause was binding and enforeable. Both parties then submitted post-arbitration briefs addressing the enforceability of the liquidated damages provision. EST's post-hearing brief argued that EST is entitled to liquidated damages and attempted to debunk the contention that the liquidated damages clause should be regarded as a penalty. Defendants' post-hearing brief also addressed the enforceability of the Agreement's liquidated damages provision. Defendants' brief clearly acknowledged the enforceability of the provision was before the arbitrator and that liquidated damages are not enforceable if regarded as a penalty. However, Defendants' brief also stated "We have researched the law and do not challenge the enforceability of the liquidated

damages clause, *although we obviously do not believe the issue should be reached because EST has failed to prove its claim.*" (emphasis added).

The arbitrator issued an Award on December 10, 2010. Based on the evidence and arguments, the arbitrator found that Defendants did not disclose the Formula to any third party. The arbitrator did find, however, that EST "narrowly" proved that Defendants used the Formula in an attempt to develop another deer attractant, although that deer attractant never went to market. Because Defendants neither disclosed the Formula to third parties nor violated the Agreement's non-compete provision, and because EST acknowledged that it suffered no damage, the arbitrator declined to award liquidated damages because doing so would operate as an impermissible penalty under controlling North Carolina law. The Arbitrator then entered an award in favor of EST for nominal damages of $1.00, together with costs and attorneys' fees.

EST now contends that by striking the liquidated damages provision under North Carolina law, the arbitrator exceeded his powers and that portion of the Arbitration Award should be vacated pursuant to 9 U.S.C. § 10(a)(4). EST similarly contends that the Arbitration Award should be modified pursuant to 9 U.S.C. § 11(b) to award EST liquidated damages in the amount of $500,000 against the Defendants, jointly and severally. Finally, EST moves pursuant to 9 U.S.C. § 9 and 9 U.S.C. § 13 that the Arbitration Award be confirmed in all other respects and be enforced as if it had been rendered by this Court.

## II. STANDARD OF REVIEW

"Arbitration awards are subject to very limited review in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation." *Dirussa v. Dean Whitter Reynolds, Inc.*, 122 F.3d 818, 821 (2d Cir. 1997) (internal quotations omitted). Arbitration awards are subject to vacatur only on the narrow grounds set forth in 9 U.S.C.

§ 10 of the Federal Arbitration Act. One such ground exists when the arbitrator has "exceeded [his] powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4). Courts may modify or correct an arbitration award in similarly limited circumstances. 9 U.S.C. § 11(b) grants federal courts the power to modify arbitration awards "where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted."

"Judicial review of arbitration awards is . . . 'among the narrowest known to the law.' " *PPG Indus. v. Int'l Chem. Workers Union Counsel*, 587 F.3d 648, 652 (4th Cir. 2009), *quoting Union Pac. R.R. Co. v. Sheehan*, 439 U.S. 89, 91 (1978). District courts "do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts." *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987). A court, therefore, "may not disturb the arbitrators' judgment, even if convinced that 'serious error' infected the panel's award." *Id.* Vacatur of an arbitration award is only proper when an arbitrator "strays from interpretation and application of the agreement and effectively, 'dispense[s] his own brand of industrial justice' . . ." *Major League Baseball Players Assn. v. Garvey*, 532 U.S. 504, 509 (2001), *quoting Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597 (1960).

### III. DISCUSSION

An arbitrator's powers and authority are derived from the scope of the arbitration agreement. *Marine Tug & Barge, Inc. v. North Am. Towing, Inc.*, 607 F.2d 649, 651 (5th Cir. 1979) (citing *United Steelworkers of Am. v. Enterprise Wheel & Car Corp.*, 363 US. 593, 597, 80 S. Ct. 1358, 4 L.Ed.2d 1424 (1960)). In reviewing an arbitration award to determine whether an arbitrator exceeded his authority, courts look to the submission to arbitration and certain provisions of the underlying contract. *Textile Workers of Union America v. American Thread Co.*, 291 F.3d 894, 897

4

(4th Cir. 1961). It is also appropriate for a court to consider the parties' definitions of the issues. *See Schoenduve Corp. v. Lucent Technologies, Inc.*, 442 F.3d 727, 732 (9th Cir. 2006). An arbitrator may address issues raised both explicitly and implicitly by the contract and the arbitration demand submissions. *Id.* Further, any issue that is "inextricably tied up with the merits of the underlying dispute" may properly be decided by the arbitrator. *Dighello v. Busconi*, 673 F. Supp. 85, 87 (D. Conn. 1987) (citations omitted)*, aff'd*, 849 F.2d 1467 (2d Cir. 1988). In pertinent part, the parties' agreement provided:

> **2.05. Agreement not to Compete or Disclose Formula or Confidential Information.** Upon execution of this Agreement, WCS and SMITH agree not to compete by developing, marketing, selling or distributing any Wild Game Attractant as defined hereinabove anywhere in the World. WCS and SMITH agree to maintain the Formula and Confidential Information in confidence and not to disclose the Formula or Confidential Information to any person. In the event that WCS and/or SMITH breaches this provision, EST shall be entitled to liquidated damages in the amount of $500,000.00.
>
> **6.10 Arbitration.** Except as provided by Article 6.01 regarding injunctive relief, any and all disputes, controversies and differences arising out of this Agreement or any breach of it, which cannot be settled through correspondence and mutual consultation of the parties to this Agreement, shall be finally settled by arbitration through the America Arbitration Association pursuant to the then-existing Commercial Arbitration Rules. The locale of any such arbitration shall be in Charlotte, North Carolina. The award and decision rendered by the arbitrator shall be binding on the parties to this Agreement, and judgment upon the award shall be entered in the aforesaid court.

Regarding the scope of the dispute, Mr. Smith and WCS stated in their pre-hearing brief submitted to the arbitrator:

> Mr. Smith and WCS readily acknowledge that they sold EST all right, title and interest in the C'Mere Deer Formula, and that the Agreement prohibits them from disclosing the C'Mere Deer Formula to third parties, and from developing, manufacturing, marketing or selling any attractant based on the C'Mere Deer Formula.

5

At the beginning of the arbitration proceeding, both sides readily agreed that the sentence above fairly and accurately framed the proceeding. Accordingly, the arbitrator noted "the case has been reduced to a breach of contract dispute concerning Smith's involvement with PRADCO . . . ." Arb. Opin. 2.

EST contends that because Defendants did not explicitly contest the enforceability of the liquidated damages provision, the arbitrator acted improperly and exceeded his authority by striking the liquidated damages provision. This Court disagrees. The issue of damages was to be decided by the arbitrator once this case was sent to arbitration. EST's Complaint, which served as the substance of EST's arbitration demand, alleged that the Agreement's "liquidated damages provision" was "valid and binding," and also alleged that EST suffered "actual damages" included "economic loss," which are pertinent considerations in relation to the appropriateness of awarding liquidated damages. (Compl. at ¶¶ 20, 43, 48.) Further, EST's pre-hearing brief submitted to the arbitrator asserted three times that EST should recover "liquidated damages." The opening statement given by EST's counsel at the hearing referenced the Agreement's liquidated damages provision, and the provision was the subject of testimony by EST's President. In sum, EST made several contentions in writing and orally that it was entitled to liquidated damages. Defendants' post-hearing brief also addressed the issue of the enforceability of the liquidated damages provision, specifically noting that liquidated damages provisions are not enforceable when regarded as a penalty. Defendants then stated that they did not challenge the enforceability of the liquidated damages, believing the arbitrator should not reach the issue because EST failed to prove its claim. As such, both parties presented arguments on the enforceability of the liquidated damages provision before, during, and after the arbitration hearing.

It is clear that an arbitrator exceeds his authority when he completely ignores troublesome contractual provisions or rewrites the contract to comport with his own sense of fairness. *See PMA*

*Capital Insurance Co. v. Platinum Underwriters Bermuda, Ltd.*, 659 F. Supp. 2d 631 (E.D. Pa. 2009), *aff'd* at 2010 U.S. App. LEXIS 23222 (3rd Cir. 2010) (vacating arbitration award where arbitrators "evidently found the Deficit Carry Forward Provision to be more trouble than it was worth and simply eliminated it from the 2003 Agreement."); *Katz v. Feinberg*, 167 F. Supp. 2d 556 (S.D.N.Y. 2001) (arbitration panel exceeded authority when substituting its own method of valuing damages even though parties previously agreed to method of valuation and no basis in law existed to strike method). Such a case is not presented by the instant facts.

Further, where unambiguous contractual terms define damages, and there is no basis in law for striking such a provision, an arbitrator exceeds his authority by refusing to apply contractual terms. For instance, in *Shearson Lehman Bros., Inc. v. Hedrich*, 639 N.E.2d 228, 232 (Ill. App. 1994), the contract at issue provided employees with either five percent or eleven percent interest on outstanding deferred income depending on whether the income was "vested" or "unvested." *Id.* The arbitration panel chose not to utilize either interest rate in calculating an award to former employees under an employer's deferred compensation plan. *Id.* Instead, the panel fashioned a damages remedy based upon its own notions of fairness. In vacating the award, the reviewing court noted that the "arbitrators exceeded their authority in awarding defendants an amount which was clearly not based upon the precise and unambiguous mathematical formulas provided in the deferred compensation agreements." *Id.*

The cases cited by EST also involve instances where an arbitrator fashioned his own remedy or reached for an issue not submitted to the arbitrator. For instance, in *Textile Workers of Union America v. American Thread Co.*, 291 F.3d 894 (4th Cir. 1961), the Fourth Circuit confirmed the district court's refusal to confirm an arbitration award because the arbitrator had unequivocally found that a discharged employee was guilty of conduct constituting "just cause," but went on to

measure the appropriateness of the penalty. *Id*. at 897-99. Importantly, nothing in the contract even remotely suggested that the arbitrator could fairly construe the contract to confer upon himself the power to determine whether the employee was "properly" discharged. *Id.* In a similar case involving arbitrator misconduct, *Bowater Carolina Co. v. Rock Hill Local Union No. 1924*, 871 F.2d 23, 23-26 (4th Cir. 1989), the Fourth Circuit found that the arbitrator exceeded his authority by awarding an employee reinstatement and back pay when the jointly framed issue was whether the employer violated its labor agreement by refusing to allow the employee to return to work. In vacating the district court's decision to confirm the award, the Fourth Circuit noted that there was nothing to indicate that any issues were submitted to the arbitrator except for the ones relating to the possible violation and the remedy provided under the parties' agreement. *Id.* at 26. Confirming an award when the parties to the arbitration were not aware that the arbitrator might decide a broader issue, would be unfair to a party that did not get to present its side of the controversy. *Id.* Further, in *Davis v. Prudential Services, Inc.*, 59 F.3d 1186 (11th Cir. 1995), the Eleventh Circuit rejected an argument that a party submitted the issue of attorneys' fees to the arbitrator when the statement of claim made no request for attorneys' fees and neither party presented evidence or argument on the issue. *Id.* at 1195.

Finally, Plaintiff contends that the case of *Totem Marine Tug & Barge, Inc. v. North Amer. Towing, Inc.*, 607 F.2d 649 (5th Cir. 1979) bears the closest resemblance to the current case. This Court disagrees. In *Totem Marine*, Totem chartered a vessel from North America to tow a loaded barge from Houston, Texas to Anchorage, Alaska. *Id.* at 650. Totem prematurely terminated the charter for alleged excessive repairs and delays, and North American demanded arbitration. *Id.* Although North American never requested damages for the charter hire–the contract difference between the date of Totem's alleged breach and the end of the charter term–the arbitration panel

8

awarded such damages nonetheless. *Id.* The panel issued a much greater award for damages than what North American asked for because, in the panel's view, the damages calculation submitted by North American was incomplete. *Id.* In vacating the award, the Fifth Circuit found that the arbitration panel improperly expanded the scope of their authority because North American conceded that the charter hire was not an issue in the arbitration and Totem prepared and argued a case in which return expenses, not charter hire, was the main issue. *Id.* at 651. The Fifth Circuit went on to note that, "[i]t is anomalous for the arbitration panel to award an unrequested item of damages three times larger than any item claimed by North American and then to hear the panel action supported with an argument that the awarded item was naturally intertwined within the scope of the arbitration." *Id*.

The cases cited by EST all involve arbitrators that impermissibly reach out and decide an issue external to the one submitted to the arbitrator. The current case does not involve such arbitrator misconduct. Here, unlike in *Totem*, the arbitrator did not decide a separate theory of liability that was not at issue in the arbitration. Although EST disputes the form that the damages took, it does not dispute that liability was a central issue in the arbitration and was fully argued. Therefore, *Totem* does not provide support for the argument that the Court should vacate the Award pursuant to § 10(a)(4). Unlike *Textile Workers*, this case does not involve an instance where the arbitrator sought to determine whether terms of the agreement were "proper." Instead, the arbitrator decided whether the provision at issue violated North Carolina law under the facts presented. Different than *Bowater*, both parties in the instant case were aware that the arbitrator might decide the issue of liquidated damages and gave the parties an opportunity to argue the enforceability of the provision. Finally, unlike the plaintiff in *Davis*, who did not mention attorneys' fees in his statement of claim or make a request for attorneys' fees during the hearing, EST mentioned the liquidated damages provision

9

in its complaint, in its pre-hearing brief, during the hearing, and in the post-hearing brief. Notwithstanding's Defendants' failure to vigorously contest the liquidated damages provision, all parties to the arbitration were aware that EST sought to enforce the liquidated damages provision and the arbitrator had the authority to decide if the provision was valid under North Carolina law before applying it.

The more relevant Federal Arbitration Act cases are those holding that an arbitrator, if given the authority to resolve all disputes between the parties, does not exceed his powers by invalidating a liquidated damages provision in the arbitration agreement under applicable state law. Cases decided outside the Fourth Circuit provide this Court with persuasive guidance on the matter.

For example, in *Apache Bohai Corp. LDC v. Texaco China BV*, 480 F.3d 397, 300 (5th Cir. 2007), Apache contended that the arbitrator exceeded his powers when he struck down an exculpatory provision in the agreement. Affirming the district court's confirmation of the arbitral award, the Fifth Circuit held that the broad arbitration clause in the parties' agreement covering "any dispute" vested the arbitrator sufficient authority to consider – and invalidate – the agreement's provisions. *See Apache*, 480 F.3d at 400, 402. Whether provisions in the contract were enforceable was properly before the court because of the broad arbitration clause. *See id.* at 402. As such, the Fifth Circuit concluded that when the arbitrator invalidated the liquidated damages provision pursuant to New York law, and subsequently awarded damages that would not have been available if the provision were still in effect, he acted upon an issue properly before him and did not exceed his powers. *See id.* at 404.

In *Dole Ocean Liner Express v. Georgia Vegetable Company*, 84 F. 3d 772, 773 (5th Cir. 1996), an arbitration panel awarded Georgia Vegetables more than the amount provided for in the liquidated damages provision. Similar to the arbitrator in the instant case, the panel struck down the

provision by relying on state law that a liquidated damages provision is not enforceable if it is not a reasonable pre-estimation of damages. *Id.* at 774. In reviewing the claim that the arbitrator exceeded his powers by invalidating the provision, the Fifth Circuit concluded that because "the determination of whether the liquidated damages provision was legally enforceable was left to the arbitration panel under the contract, the arbitrators did not 'exceed their powers' by finding, as a matter of law, that it was void." *Id.* at 775.

More recently, the Southern District of Florida, in *Saturn Telecommunications Svcs., Inc. v. Covad Communications Co.*, 560 F. Supp. 2d 1278 (S.D. Fla. 2008), confirmed an arbitration award after an arbitrator invalidated a contractual provision prohibiting recovery of lost revenue and profits. The underlying dispute involved a provider of voice over internet protocol ("VOIP") and a telecommunication company. *Id.* at 1281. The arbitrator issued an award in favor of the VOIP that included lost revenue and profit. *Id.* at 1280-81. While the telecommunication company did not contest liability, it argued that the arbitrator exceeded his powers in awarding the VOIP provider damages for lost revenue and profits. *Id.* at 1281. The telecommunication company further argued that the arbitrator disregarded a provision in the parties' agreement which prohibited damages for lost profits and damages. *Id.* at 1283. The district court, found that the parties' agreement contained a broad arbitration provision and nothing in the arbitration provision removed from the arbitrator the power to determine the validity of provisions in the agreements. *Id.* at 1286. The rationale articulated by the district court is particularly appropriate in this case, "[i]n light of the [Agreement's] provisions, the reasonable inference is the parties intended that the arbitrator interpret the contract, determine the validity of the contract's provisions, and settle all disputes arising from the contract." *Id.*

*See also Peyovich v. World Mortgage Co.*, No. 6:08-cv-404, 2010 WL 3516721 (July 29, 2010 M.D. Fla.) (arbitrator did not exceed authority in declining request for attorneys' fees when agreement gave arbitrator discretion on subject of awarding attorneys' fees); *Jih v. Long & Foster Real Estate, Inc.*, 800 F. Supp. 312, 319 (D. Md. 1992) (arbitration panel did not exceed authority because damages awarded, though potentially based on a tort theory of liability, were inextricably tied up with the merits of the underlying dispute).

This Court finds that the instant case analogous to *Apache, Dole Ocean Liner*, and *Saturn Telecommunications*. Like the agreement in *Apache*, the Agreement in the instant case is broad, as it governs "any and all disputes" between the parties. Similar to the arbitration panel in *Dole Ocean Liner*, the arbitrator in this case struck the provision based on controlling state law governing the enforceability of liquidated damages provisions. Finally, the rationale articulated in *Saturn Telecommunications*–that it is reasonable to conclude from the Agreement that the parties anticipated "the arbitrator interpret the contract, determine the validity of the contract's provisions, and settle all disputes arising from the contract"–applies with equal force to the current case. Moreover, the fact that the parties previously allowed the arbitrator to strike the non-compete provision based on controlling state law provides further support for the proposition that the parties expected the arbitrator would interpret contractual provisions and strike any that were void under North Carolina law. In sum, the Agreement, the parties' conduct during discovery and the parties' contentions before, during, and after the arbitration hearing all provide support for the contention that the arbitrator was vested with the authority to determine the validity of the liquidated damages provision.

For the foregoing reasons, this Court concludes that there is no basis for vacating the arbitrator's award based on the contention that the arbitrator exceeded the scope of his authority. The arbitrator properly summed up the parties dispute as an alleged breach of contract and was vested with the authority to interpret and, if violative of law, strike down pertinent contractual provisions. In that context, the enforceability of the liquidated damages provision in light of the Defendants' purported breach was "inextricably tied up with the merits of the underlying dispute." *See Dighello*, 673 F. Supp. at 87. Therefore, EST's motion to vacate, confirm, and modify the award is denied, and the arbitrator's award is confirmed.

## IV. CONCLUSION

**THEREFORE, IT IS HEREBY ORDERED** that:

(1) Plaintiff's Motion to Vacate, Modify, and Confirm Arbitration Award (Doc. 33) is **DENIED.**

**(2) The arbitrator's award is CONFIRMED without modification.**

Signed: May 24, 2011

Richard L. Voorhees
United States District Judge